UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONALD LOESEL, ARTHUR
LOESEL, GAYLE LOESEL, ELAINE
LOESEL, VALERIAN NOWAK,
VALERIAN NOWAK AND ALICE
B. NOWAK TRUST BY VALERIAN
NOWAK,

     Plaintiffs,

v.

            Case Number 08-11131-BC
            Honorable Thomas L. Ludington

CITY OF FRANKENMUTH,

     Defendant.
_____/

**ORDER CANCELING HEARING, DENYING DEFENDANT'S MOTION IN LIMINE REGARDING MONETARY DAMAGES, DENYING PLAINTIFFS' MOTIONS IN LIMINE REGARDING ORDINANCES OF OTHER MUNICIPALITIES AND DEFENDANT'S CONCEIVABLE REASONS FOR ORDINANCE, AND DENYING AS MOOT PLAINTIFF'S MOTION IN LIMINE REGARDING LIABILITY INSURANCE**

   On May 4, 2009, Plaintiffs Ronald, Arthur, Gayle, and Elaine Loesel, Valerian Nowak, and The Valerian Nowak and Alice B. Nowak Trust filed an amended complaint [Dkt. # 33] against Defendant City of Frankenmuth. At this juncture, Plaintiffs maintain a facial equal protection cause of action against Defendant. The Court previously dismissed, inter alia, Plaintiffs' as applied equal protection cause of action. The case is scheduled for jury trial on February 16, 2010, and four motions in limine are now before the Court, and scheduled for hearing at the same time as the final pretrial conference on February 4, 2010.

   This order will provide a brief summary of the factual background of the case before addressing each motion in limine along with the specific facts relevant to the particular motion. For the reasons stated below, Defendant's motion in limine to preclude testimony and evidence of

monetary damages [Dkt. # 50], Plaintiffs' motion in limine regarding ordinances of other municipalities [Dkt. # 59], and Plaintiffs' motion in limine regarding Defendant's "conceivable" reasons for ordinance [Dkt. # 60] will be denied. Additionally, Plaintiffs' motion in limine regarding Defendant's possible lack of liability insurance [Dkt. # 58] will be denied as moot.

I

Plaintiffs are owners of a tract of land on the northern outskirts of Frankenmuth. Collectively, Plaintiffs entered into an option agreement with Wal-Mart for Wal-Mart to purchase the land for four-million dollars if it could build one of its stores on the land. Defendant learned of the contract, became concerned about the impact that a Wal-Mart and other similar stores would have on Defendant, and eventually adopted a zoning ordinance that included a building size restriction, which may have precluded Wal-Mart from building one of its stores on Plaintiffs' property. Wal-Mart abandoned its application to build a store on Plaintiffs' property and terminated the option contract with Plaintiffs.

Prior to and throughout this litigation, Defendant has contended that the challenged zoning ordinance was motivated by several factors, including an interest in preserving Defendant's traditional Bavarian theme and character of the community. Generally, Defendant contends that the size-cap restriction was enacted to control the areas where such large uses could develop in order to protect that community interest. In denying Defendant's motions for summary judgment, the Court found that a genuine issue of material fact exists as to whether Defendant has advanced any conceivable, rational reason for application of the ordinance to only the particular portion of Defendant to which it applies.

Additionally, regardless of any conceivable reasons for such limited application of the

ordinance, Plaintiffs have advanced evidence that Defendant structured the ordinance in the manner that it did to specifically prevent Wal-Mart from building on Plaintiffs' property and to avoid limiting the ability of other established businesses to expand. The evidence advanced by Plaintiffs consists largely of emails sent to and from Charles Graham, Defendant's City Manager. Plaintiffs contend that the potential rationale supporting the ordinance advanced by Defendant's expert, R. Donald Wortman, that Defendant sought to encourage particular kinds of development in the southern end of Defendant, rather than the northern end where Plaintiffs' property lies, is inconsistent with the bulk of evidence of record.

II

Defendant filed a motion in limine [Dkt. # 50] contending that any evidence or testimony concerning money damages must be excluded for two main reasons: (1) the only proper remedies for a facial challenge to a zoning ordinance is a declaration that the ordinance is unconstitutional and invalidation by the Court; and (2) any request for money damages is speculative because Plaintiffs cannot advance evidence that Wal-Mart would have closed on their property if the challenged ordinance had not been enacted. Defendant emphasizes the following facts regarding the agreement between Plaintiffs and Wal-Mart:

On May 26, 2005, Plaintiffs entered into an option agreement with Wal-Mart for purchase of Plaintiffs' property for the location of a new Wal-Mart store. *See* [Dkt. # 18-7] (agreement). The agreement provided for a $50,000 deposit towards the purchase price. The agreement included several time constrained conditions precedent, one of which was successful obtainment of all governmental approvals "deemed necessary by Wal-Mart." ¶ 14. The agreement noted that "Final Approval" of the governmental approvals shall be the date when:

(i) all of the Governmental Approvals have been reviewed and finally approved by the appropriate governmental agencies, (ii) any ordinances with respect thereto have taken effect, (iii) the time has passed for appeal of all Governmental Approvals, (iv) no notice of referendum or initiative with respect to any Governmental Approval has been published or publicized and (v) any appeals or litigation with respect to (iii) or (iv) above has been prosecuted and resolved in a manner which is satisfactory to Wal-Mart and is not subject to remand to lower courts or governmental agencies.

¶ 14A.  The agreement provided that Wal-Mart may waive any of the contingencies, or terminate the agreement if Final Approval has not occurred before the closing date.  *Id.*

Additionally, Wal-Mart had a period of 180 days to determine the feasibility of the project. ¶ 14B.  The "Feasibility Period" could be extended by Wal-Mart for two additional sixty day periods by adding $5,000 to the deposit.  *Id.*  A failure to timely make the deposit would constitute default by Wal-Mart.  *Id.*  At any time prior to the end of the Feasibility Period, Wal-Mart could decide to terminate the agreement "for any reason in its sole and absolute discretion" and receive a refund of the deposit.  *Id.*

The agreement was also "expressly conditioned on zoning of the Property for business retail usage."  ¶ 14F.  If the appropriate zoning, and annexation to the City of Frankenmuth was not "approved and obtained on or before the Closing," Wal-Mart had the option to terminate the agreement and receive a refund of the deposit or to waive the contingency and proceed under the agreement.  *Id.*  Finally, Wal-Mart potentially had the ability to terminate the agreement based on the results of an environmental investigation that it was authorized to conduct.  *See* ¶¶ 14D, 24.

On December 7, 2005, the day after Defendant's City Council approved the challenged ordinance, there was an amendment to the purchase agreement, which had been drafted November 15, 2005.  The sale and purchase price was amended to add acreage for a total of 37 acres at a price of $4 million.  The deposit paragraph was amended to indicate that $5,000 of the $50,000 deposit

was non-refundable to Wal-Mart except in the event of condemnation of the property or Plaintiffs' default. The contingencies remained the same. On or about March 20, 2006, after two extensions of the Feasiblity Period, Wal-Mart elected to terminate the agreement and authorized the release of $5,000 to Plaintiffs.

A

Defendant relies on *Berger v. City of Mayfield Heights*, 154 F.3d 621 (6th Cir. 1998), for the proposition that money damages are not available for a facial challenge to a zoning ordinance. In *Berger*, the court invalidated an ordinance that would have required the plaintiff to clear his land of trees because the ordinance violated the Equal Protection Clause on its face. 154 F.3d at 626. Defendant does not explain, however, why that leads to the conclusion that money damages are not available. Indeed, it does not appear that the question was before the court, as the court explained that the plaintiff "will obtain full relief by the new sections of the ordinance in question being declared null and void because the parties agreed to hold in abeyance the criminal prosecution and the cutting down of trees on [the plaintiff's] lot until this appeal was decided." *Id.* Contrary to Defendant's contention, this passage suggests that money damages could have been available, had they been necessary for the plaintiff to obtain full relief.

Defendant relies on *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 543 (2005), for the additional proposition that money damages are only available when a takings challenge is raised. In *Lingle*, the plaintiff brought both due process and takings claims, which Defendant emphasizes that the Supreme Court distinguished as follows:

> Instead of addressing a challenged regulation's effect on private property, the "substantially advances" [due process] inquiry probes the regulation's underlying validity. But such an inquiry is logically prior to and distinct from the question whether a regulation effects a taking, for the Takings Clause presupposes that the government has acted in pursuit of a

> valid public purpose. The Clause expressly requires compensation where government takes private property "*for public use*." It does not bar government from interfering with property rights, but rather requires compensation "in the event of *otherwise proper interference amounting to a taking*." *First English Evangelical Lutheran Church [v. Los Angeles County]*, 482 U.S. [304,] 315 [(1987)] (emphasis added). Conversely, if a government action is found to be impermissible-for instance because it fails to meet the "public use" requirement or is so arbitrary as to violate due process-that is the end of the inquiry. No amount of compensation can authorize such action.

544 U.S. at 543. Defendant does not explain, however, why the fact that compensation cannot "authorize" a transaction means that compensation is not available as a potential *remedy* for an action that violates the Equal Protection Clause.

In response, Plaintiffs contend that it is "well-settled" that 42 U.S.C. § 1983 provides a vehicle for Plaintiffs to recover money damages for a constitutional violation. *See Cmties. for Equity v. Mich. High Sch. Athletic Ass'n*, 459 F.3d 676, 681 (6th Cir. 2006) (recognizing generally that "§ 1983 serves as a vehicle to obtain damages for violations of both the Constitution and of federal statutes"). Plaintiff quotes the dissenting opinion in *Midwest Media Property LLC v. Symmes Twp.*, 503 F.3d 456, 481 (6th Cir. 2007), for the general proposition that "courts allow damages, under 42 U.S.C. § 1983, against municipalities for the enforcement of unconstitutional zoning ordinances." (internal citations omitted).

Defendant did not file a reply. At this juncture, Defendant has not provided any legal authority to support the conclusion that Plaintiffs cannot recover money damages. Indeed, it would seem that as long as Plaintiff can establish the necessary causal connection, Plaintiffs can recover money damages. *See Farrar v. Hobby*, 506 U.S. 103, 112 (1992) (explaining that "the basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights") (internal quotations omitted).

B

Defendant contends that Plaintiffs should not be allowed to present evidence or testimony of financial harm because Plaintiffs cannot present any evidence that Wal-Mart would have proceeded under the terms of the option agreement despite the enactment of the challenged ordinance. Defendant emphasizes the contingent nature of the option agreement between Plaintiffs and Wal-Mart and contends that Plaintiffs cannot establish "proof of lost profits with a reasonable degree of certainty," quoting *Joerger v. Gordon Food Serv., Inc.*, 568 N.W.2d 365, 369 (Mich. Ct. App. 1997).

In response, Plaintiffs emphasize that "[d]amages are only speculative when the evidence is inadequate to supply the basis for such a determination," quoting *Allied Accessories & Auto Parts Co. v. Gen. Motors Corp.*, 825 F.2d 971, 975 (6th Cir. 1987). Plaintiffs contend that when the evidence is disputed, it is the jury's prerogative to determine which party's evidence is credible, citing *Fera v. Vill. Plaza, Inc.*, 242 N.W.2d 372, 375 (Mich. 1976). Plaintiffs intend to present the testimony of David Ewing, a Wal-Mart Senior Real Estate Manager, to establish that (1) Wal-Mart intended to exercise its option to purchase Plaintiffs' property; and (2) that it would have paid the full purchase price upon closing but for the enactment of the challenged ordinance.

Significantly, Mr. Ewing's testimony appears to support the necessary causal connection between Defendant's conduct and the financial harm to Plaintiffs. While Mr. Ewing's credibility can certainly be questioned, particularly based on the other conditions precedent contained in the agreement, this does not mean that the jury could not ascertain damages with a reasonable degree of certainty. Presumably, the harm could simply be determined by determining the difference between the definite price term contained in the agreement between Plaintiffs and Wal-Mart and the

value of Plaintiffs' property.

Based on the above, Defendant's motion in limine to exclude evidence of money damages will be denied.

III

Plaintiffs filed a motion in limine [Dkt. # 58] contending that evidence related to whether Defendant is insured to Plaintiffs' claims should be excluded and highlighted excerpts from City Manager Graham's testimony suggesting that Defendant may not be insured. In response, Defendant concurs in the relief sought, but reserves the right to elaborate on the issue if Plaintiffs first introduce evidence on the issue. In reply, Plaintiffs indicate that they have no intent to introduce any evidence on the issue. Based on the above, Plaintiffs' motion will be denied as moot.

IV

Plaintiffs filed a motion in limine [Dkt. # 59] contending that the following two passages of Defendant's expert report prepared by Mr. Wortman should be excluded because evidence regarding ordinances enacted in other municipalities is not relevant:

> Numerous municipalities have enacted special regulations for large format retail and include: Ypsilanti, Charlevoix, Petosky, Wixom, Monroe, Lapeer, Scio Township, Northville Township, Orion Township, Canton Township, Independence Township and numerous other communities in Michigan. These types of regulations are a common and reasonable form of land use regulation both on a state-wide and national level.

And:

> The [challenged ordinance] CL-PUD overlay zone restrictions contain a maximum size limitation of 65,000 sq. ft. as well as design standards. This zoning technique is a common zoning practice employed by many municipalities to regulate local and general commercial uses.

Pls. Br. Ex. A.

Plaintiffs advance three mains reasons why the evidence should be excluded. First, Plaintiffs contend that it should be excluded under Federal Rule of Evidence 402, which provides that evidence that is not relevant is inadmissible. Plaintiffs emphasize that evidence is "relevant" under Federal Rule of Evidence 401 when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Plaintiffs contend that any evidence, testimony, or arguments concerning ordinances enacted in other municipalities that limit the size of a retail store should be excluded because it has no tendency to make the existence of any fact that is of consequence to Plaintiffs' cause of action more or less probable.

Second, Plaintiffs contend that such evidence is unduly prejudicial and inadmissible under Federal Rule of Evidence 403 because it will confuse the issues and mislead the jury. Plaintiffs contend that evidence of similar ordinances enacted in other municipalities limiting the size of retail stores might influence a jury to believe or make improper assumptions that enacting an ordinance that limits the size of a retail store cannot, as a rule, be unconstitutional.

Third, and finally, Plaintiffs contend that Mr. Wortman should not be able to testify to the fact that other communities have enacted similar zoning ordinances because such testimony is not based on scientific, technical, or other specialized knowledge under Federal Rule of Evidence 702. Plaintiffs further contend that such evidence will not assist the jury in determining the issue or better understanding the evidence.

In response, Defendant contends that the challenged evidence is relevant to show that a size-cap restriction is generally a permissible planning tool. Defendant also contends that Mr. Wortman has specialized knowledge in the area of zoning and planning that will aid the trier of fact in

understanding certain aspects of zoning practices.

In reply, Plaintiffs restate their original arguments and assert that the jury should be informed that size-limitations are not per se legal. Indeed, it appears that Plaintiffs' concerns regarding prejudice can be adequately dealt with through instructions that inform the jury that while size-cap restrictions may be permissible, they are not always so. Plaintiffs have not advanced an adequate justification to exclude the highlighted portions of Mr. Wortman's report, as the excerpts are relevant to provide general background. Thus, Plaintiffs' motion will be denied. Notably, however, the opposite result would likely be reached if Defendant sought to introduce further evidence, such as the actual text of the ordinances.

V

Finally, Plaintiffs filed a motion in limine [Dkt. # 60] contending that Defendant should not be able to introduce evidence, testimony, or arguments concerning any "conceivable" and allegedly rational reasons it could have for enacting the challenged ordinance. Plaintiffs contend that Defendant must "make a clear connection between the legislative record as it exists and the reasons it *now* asserts motivated it to formulate and enact the ordinance."

Plaintiffs quote the following statement from *Craigmiles v. Giles*, 312 F.3d 220, 227 (6th Cir. 2002): "The Supreme Court, employing rational basis review, has been suspicious of a legislature's circuitous path to legitimate ends when a direct path is available." Yet, the following passage makes it clear that *Craigmiles* does not support Plaintiffs' position:

> Even foolish and misdirected provisions are generally valid if subject only to rational basis review. As we have said, a statute is subject to a "strong presumption of validity" under rational basis review, and we will uphold it "if there is any reasonably conceivable state of facts that could provide a rational basis." *Walker v. Bain*, 257 F.3d 660, 668 (6th Cir. 2001). *See also Heller v. Doe*, 509 U.S. 312, 319 (1993). Those seeking to invalidate a statute using rational basis review must "negative every conceivable basis that might support it."

-10-

> *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973). Our standards for accepting a justification for the regulatory scheme are far from daunting. A proffered explanation for the statute need not be supported by an exquisite evidentiary record; rather we will be satisfied with the government's "rational speculation" linking the regulation to a legitimate purpose, even "unsupported by evidence or empirical data." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). Under rational basis review, it is " 'constitutionally irrelevant [what] reasoning in fact underlay the legislative decision.' " *Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (quoting *Flemming v. Nestor*, 363 U.S. 603 (1960)).

312 F.3d at 223-24.

Additionally, Plaintiffs rely on *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), which they assert sets forth a framework for examining discriminatory purposes. *Arlington* is of limited utility in this case, however, because it involved racial discrimination, which activates a stricter standard of review than rational basis. For example, the Court explained that "[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." While *Arlington* may stand for the proposition that "the historical background of the decision," "the specific sequence of event leading up to the challenged decision," "departures from the normal procedural sequence," "substantive departures," and "[t]he legislative or administrative history" may be relevant to analyzing the challenged ordinance, it does not provide support for the proposition that "conceivable" reasons are not relevant to a rational basis review.

In response, Defendant emphasizes that "the Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification," quoting *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992). "Nevertheless, this Court's review does require that a purpose may conceivably or 'may reasonably have been the purpose and policy' of the relevant governmental decisionmaker."

-11-

*Id.* (quoting *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 528-529 (1959)).  Further, in *FCC v. Beach Communications*, the Supreme Court explained as follows:

> In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.  Where there are "plausible reasons" for Congress' action, "our inquiry is at an end."  This standard of review is a paradigm of judicial restraint.  "The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted."
>
> On rational-basis review, a classification in a statute such as the Cable Act comes to us bearing a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden "to negative every conceivable basis which might support it."  Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.  Thus, the absence of " 'legislative facts' " explaining the distinction "[o]n the record," has no significance in rational-basis analysis.  In other words, a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.  " 'Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function.' "
>
> These restraints on judicial review have added force "where the legislature must necessarily engage in a process of line-drawing."  Defining the class of persons subject to a regulatory requirement-much like classifying governmental beneficiaries-"inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration."

508 U.S. 307, 313-16 (1993) (internal citations and quotations omitted).

In reply, Plaintiffs continue to argue that because Defendant "did provide justifications for the ordinance at issue in its 'findings of fact' that preceded the ordinance, it cannot now purport to tell the jury a brand-new reasons for the governmental action."  In particular, Plaintiffs rely on *Bannum, Inc. v. City of Louisville*, 958 F.2d 1354, 1364 (6th Cir. 1992), where Plaintiffs emphasize that the court of appeals stated, "it is apparent to us that the court was not in error in determining

from the evidence that the city was without a rational basis for its different treatment of similar group home uses." Plaintiffs also rely on *Buckeye Community Hope Foundation v. City of Cuyahoga Falls*, 263 F.3d 627, 644 (6th Cir. 2001), where Plaintiffs emphasize that the court of appeals remanded the case for trial where the plaintiffs "presented sufficient evidence to create a genuine issue of material fact as to whether the defendants, by denying plaintiffs the benefit of the lawfully approved site plan, engaged in arbitrary, irrational, and therefore unconstitutional application of the law in violation of plaintiffs' right to due process."

It is not apparent how these cases support the proposition that Defendant's "conceivable" reasons should not be considered at trial. Rather, the law cited by Plaintiffs seems to support the proposition that Defendant's "conceivable" reasons should ultimately be rejected by the finder of fact as not reasonably supporting the challenged ordinance. The possibility that the jury may not be persuaded that Defendant's rationale is reasonable does not mean that the evidence should be excluded from the jury's consideration. Thus, Plaintiff's motion will be denied.

VI

Accordingly, it is **ORDERED** that the hearing scheduled for February 4, 2010, is **CANCELED**. The final pretrial conference remains scheduled for that day.

It is further **ORDERED** that Defendant's motion in limine regarding monetary damages [Dkt # 50] is **DENIED**.

It is further **ORDERED** that Plaintiffs' motions in limine regarding ordinances enacted in other municipalities [Dkt. # 59] and regarding Defendant's "conceivable reasons" [Dkt. # 60] are **DENIED**.

It is further **ORDERED** that Plaintiffs' motion in limine regarding liability insurance [Dkt. # 58] is **DENIED AS MOOT**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: January 25, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 25, 2010.

s/Tracy A. Jacobs  
TRACY A. JACOBS

---