UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONALD LOESEL, ARTHUR
LOESEL, GAYLE LOESEL, ELAINE
LOESEL, VALERIAN NOWAK,
VALERIAN NOWAK AND ALICE
B. NOWAK TRUST BY VALERIAN
NOWAK,

        Plaintiffs,

v.

        Case Number 08-11131-BC
        Honorable Thomas L. Ludington

CITY OF FRANKENMUTH,

        Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO QUASH SUBPOENA FOR TRIAL TESTIMONY

On May 4, 2009, Plaintiffs Ronald, Arthur, Gayle, and Elaine Loesel, Valerian Nowak, and The Valerian Nowak and Alice B. Nowak Trust filed an amended complaint [Dkt. # 33] against Defendant City of Frankenmuth. Plaintiffs' facial equal protection claim is scheduled for jury trial on February 16, 2010. Now before the Court is Defendant's motion to quash subpoena for trial testimony [Dkt. # 65] of John Polomsky and other Planning Commission members, City Council members, Mayor Gary Rupprecht, Downtown Development Authority ("DDA") Executive Director Sheila Stamiris, and City Manager Charles Graham. On January 27, 2010, Plaintiff filed a response [Dkt. # 78]; and on February 2, 2010, Defendant filed a reply [Dkt. # 79]. For the reasons stated below, Defendant's motion to quash will be denied.

I

As explained in the Court's prior orders, Plaintiffs are owners of a tract of land on the

northern outskirts of Frankenmuth. Collectively, Plaintiffs entered into an option agreement with Wal-Mart for Wal-Mart to purchase the land for four-million dollars if it could build one of its stores on the land. Defendant learned of the contract, became concerned about the impact that a Wal-Mart and other similar stores would have on Defendant, and eventually adopted a zoning ordinance that included a building size restriction, which may have precluded Wal-Mart from building one of its stores on Plaintiffs' property. Wal-Mart abandoned its application to build a store on Plaintiffs' property and terminated the option contract with Plaintiffs.

Prior to and throughout this litigation, Defendant has contended that the challenged zoning ordinance was motivated by several factors, including an interest in preserving Defendant's traditional Bavarian theme and character of the community. Generally, Defendant contends that the size-cap restriction was enacted to manage the development of the City where such uses could develop in order to protect that community interest. In denying Defendant's motions for summary judgment, the Court found that a genuine issue of material fact exists as to whether Defendant has advanced any rational reason for application of the ordinance to only the particular portion of Defendant to which it applies.

Additionally, regardless of the question of whether Defendant has advanced any reason for such limited application of the ordinance, Plaintiffs have advanced evidence that Defendant structured the ordinance in the manner that it did to specifically prevent Wal-Mart from building on Plaintiffs' property and to avoid limiting the ability of other established businesses to expand. The evidence advanced by Plaintiffs consists largely of emails sent to and from Charles Graham, Defendant's City Manager. Plaintiffs contend that the potential rationale supporting the ordinance advanced by Defendant's expert, R. Donald Wortman, that Defendant sought to encourage particular

kinds of development in the southern end of Defendant, rather than the northern end where Plaintiffs' property lies, is inconsistent with the bulk of the evidence of record.

II

In its motion to quash, Defendant anticipates that Plaintiffs will seek trial testimony from Polomsky and other Planning Commission members, City Council members, Mayor Rupprecht, DDA Executive Director Stamiris, and City Manager Graham regarding their individual motives and reasons for support or opposition to the challenged ordinance. Defendant contends that the Court should quash a subpoena for the trial testimony of these individuals because the anticipated testimony is not relevant to whether there is a conceivable rational basis for the challenged ordinance. Defendant further contends that the anticipated testimony of the City Council and Planning Commission members, whose votes and recommendations led to the enactment of the challenged ordinance, is protected by a legislative privilege and a deliberative process privilege.

A

Defendant explains that the anticipated testimony of the identified individuals is not relevant because it is not probative of whether there is a conceivable rational basis for the challenged ordinance. Defendant emphasizes that the individuals who were not members of the City Council cannot testify as to the thought processes, state of mind, or ill-will or animus of the City Council members. In particular, Defendant contends that any testimony by DDA Executive Director Stamiris suggesting that a Wal-Mart would have had a positive economic impact on Defendant is not relevant, given the fact that the ultimate issue is whether Plaintiffs can negate any conceivable rational basis for the ordinance. Defendant also contends that any testimony by City Manager Graham concerning his personal viewpoints regarding Wal-Mart cannot be attributed to the City

-3-

Council members.

Defendant asserts that such testimony would be more prejudicial than probative because it will confuse and mislead the jury as to the issue in the case and result in an undue delay of trial proceedings. More specifically, Defendant asserts that the testimony of non-City Council members will mislead the jury into impermissibly equating the individuals' reasoning and possible bias with that of all of the City Council members. Defendant emphasizes that other individuals do not speak for the City Council.

In response, Plaintiffs contend that the motivations of the City Council and Planning Commission members are relevant to whether the challenged ordinance is constitutional. Plaintiffs emphasize that "[a] 'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by negativing every conceivable basis which might support the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Warren v. City of Athens*, 411 F.3d 697 (6th Cir. 2005) (internal quotations omitted). To a certain extent, Plaintiffs rely on *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), wherein the Court explained that "the historical background of the decision," "the specific sequence of events leading up to the challenged decision," "departures from the normal procedural sequence," "substantive departures," and "[t]he legislative or administrative history" may provide circumstantial evidence of discriminatory intent.

As Defendant contends, Defendant need only advance a "conceivable" rational basis for enactment of the challenged ordinance, and none of the City Council members, Planning Commission members, or other anticipated trial witnesses need have articulated a rational basis for the ordinance at the time of its enactment. *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992) (explaining

that "the Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification"). "Nevertheless, this Court's review does require that a purpose may conceivably or 'may reasonably have been the purpose and policy' of the relevant governmental decisionmaker." *Id.* (quoting *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 528-529 (1959)). The anticipated trial testimony of the individuals challenged by Defendant is generally relevant for purposes of determining whether a rationale advanced by Defendant " 'may reasonably have been the purpose and policy' of the relevant governmental decisionmaker," *see id.*, or whether the challenged ordinance is "inexplicable by anything but animus toward the class [Plaintiffs] it affects," *Romer v. Evans*, 517 U.S. 620, 634-35 (1996).

B

With respect to the City Council and Planning Commission members, Defendant contends that their anticipated trial testimony regarding their motives or reasons for enactment, or recommendations regarding enactment, of the challenged ordinance is not relevant and is protected by a legislative privilege and a deliberative process privilege. Defendant relies primarily on *Pythagorean, Inc. v. Grand Rapids Township*, 656 N.W.2d 212, 213 (Mich. Ct. App. 2002), in which the court of appeals reversed the lower court's decision denying the defendant-township's motion to "block the depositions of its planning commission members." While Defendant relies on *Pythagorean* to support the existence of a privilege, the court decided the issue based on relevance. The court of appeals' analysis is as follows:

> In *Sheffield* [*Development Co. v. Troy*, 99 Mich. App. 527, 298 N.W.2d 23 (1980)], our Court noted the longstanding rule that " '[c]ourts are not concerned with motives that actuate members of a legislative body in enacting a law, . . . .' " *Id.* at 530, 298 N.W.2d 23, quoting *People v. Gibbs*, 186 Mich. 127, 134-135, 152 N.W. 1053 (1915). In other words, the

> validity of a law has nothing to do with the motivation of the legislators who enact it; "[b]ad motives might inspire a law which appeared on its face and proved valid and beneficial, while a bad and invalid law might be, and sometimes is, passed with good intent and the best of motives." *Sheffield*, *supra* at 530-531, 298 N.W.2d 23; *see also People v. Gardner*, 143 Mich. 104, 107, 106 N.W. 541 (1906) (the legality of the acts of legislative or corporate bodies cannot be tested by the motives of the individual members).
>
> Thus, the motivation of legislators who actually approve or reject zoning proposals is irrelevant to a determination of the validity of those actions. That being the case, we fail to see how the motivation of members of a planning commission with respect to a zoning question can have any relevance either. If anything, their motivation is even less relevant to a determination of the validity of an approved zoning proposal; the planning commission, acting as a zoning board, *see* M.C.L. § 125.331, only conducts hearings for the purposes of a recommendation to the township board, which ultimately makes the final decision. *See* M.C.L. § 125.277, 125.284.
> . . .
> Plaintiff has simply come forward with no argument by which we could conclude that the motivation or thought processes of the planning commission members in making their recommendation to the board might be relevant or might reasonably be calculated to lead to the discovery of any relevant evidence. *See* MCR. 2.302(B)(1). Further, we note that the planning commission members are volunteers who willingly give of their time and efforts for the good of the community. Justice requires that they be protected from the annoyance and undue burden and expense of deposition discovery that has no relevance to the issues involved in plaintiff's complaint. *See* MCR. 2.302(C).

656 N.W.2d at 214-15.

Defendant also relies on *Harold Co. v. Eastern Michigan University Board of Regents*, 693 N.W.2d 850 (Mich. Ct. App. 2005), wherein the Michigan court of appeals explained the significance of the deliberative process privilege. The court explained that "[t]he deliberative process privilege is grounded in the unromantic reality of politics," and that such a privilege facilitates the exchange of information and the functioning of government. *Id.* at 860 (quoting *Times Mirror Co. v. Sacramento County Super. Ct.*, 813 P.2d 240, 252 (Cal. 1991)).

Finally, Defendant emphasizes that the U.S. Supreme Court has recognized that legislators at any level do not need to articulate the reasons or motivations for enactment of any statute or ordinance, citing *Nordlinger*, 505 U.S. at 15, and *FCC v. Beach Communications, Inc.*, 508 U.S.

307, 315 (1993). Defendant emphasizes that in *Arlington Heights*, 429 U.S. at 268, the Court recognized that testimony concerning the purpose of an official action would frequently be barred by privilege.

In response, Plaintiffs contend that the privileges asserted by Defendant do not apply to a state actor sued in a federal court concerning a federal question. Plaintiffs contend that the U.S. Supreme Court has unequivocally held that the legislative privilege does not extend to state legislators because federal courts are not bound by state law regarding privilege issues, but are bound by Federal Rule of Evidence 501, citing *United States v. Gillock*, 445 U.S. 360, 367-68 (1980). Rule 501 provides in full:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

In determining that a legislative privilege did not apply to state legislators, the *Gillock* Court noted that a specific legislative privilege had not been contemplated by the drafters of Rule 501 although nine other specific privileges had been proposed. 445 U.S. at 367-68 ("Although that fact standing alone would not compel the federal courts to refuse to recognize a privilege omitted from the proposal, it does suggest that the claimed privilege was not thought to be either indelibly ensconced in our common law or an imperative of federalism.").

Indeed, in its reply brief, Defendant acknowledges that "federal privilege applies to a federal question case." For the first time, Defendant presents an argument that this Court should recognize a federal legislative privilege, citing *Jaffee v. Redmond*, 518 U.S. 1, 8 (1996) ("Rule 501 of the

Federal Rules of Evidence authorizes federal courts to define new privileges by interpreting 'common law principles . . . in the light of reason and experience.' "). Essentially, Defendant contends that the Court should extend the legislative immunity established for federal legislators by the Speech or Debate Clause of the U.S. Constitution, an immunity that federal courts have extended to state and local legislators, to an evidentiary context because a primary benefit of immunity is an effective evidentiary privilege.

A nearly identical argument was rejected in *Gillock*, 445 U.S. at 368 ("Gillock argues that the historical antecedents and policy considerations which inspired the Speech or Debate Clause of the Federal Constitution should lead this Court to recognize a comparable evidentiary privilege for state legislators in federal prosecutions."). While Defendant contends that *Gillock* is easily distinguished because it addressed a federal criminal prosecution of a state legislator, Defendant does not explain why the Court's analysis is not applicable in a civil context.

In *Gillock*, the Court explained that "[t]wo interrelated rationales underlie the Speech or Debate Clause: first, the need to avoid intrusion by the Executive or Judiciary into the affairs of a coequal branch, and second, the desire to protect legislative independence." *Id.* at 369 (internal citation omitted). The court noted that the first rationale "rest[s] solely on the separation of powers doctrine, [and] gives no support to the grant of a privilege to state legislators in federal criminal prosecutions." *Id.* at 370. The court further explained that "we do not have the struggles for power between the federal and state systems such as inspired the need for the Speech or Debate Clause as a restraint on the Federal Executive to protect federal legislators." *Id.* With respect to principles of comity, the court emphasized that "federal interference in the state legislative process is not on the same constitutional footing with the interference of one branch of the Federal Government in the

affairs of a coequal branch." *Id.* (internal citations omitted). The Court recognized that "the lack of an evidentiary privilege for a state legislator might conceivably influence his conduct while in the legislature," but was not persuaded that such an effect alone justified recognition of a legislative privilege. *Id.* at 371.

With respect to the second rationale underlying the Speech or Debate Clause, "the need to insure legislative independence," the Court acknowledge that in *Tenney v. Brandhove*, 341 U.S. 367 (1951), "this Court was cognizant of the potential for disruption of the state legislative process" when it "held that a state legislator's common-law absolute immunity from civil suit survived the passage of the Civil Rights Act of 1871." *Gillock*, 445 U.S. at 372. The Court distinguished *Tenney* because "[t]he issue there, however, was whether state legislators were immune from civil suits for alleged violations of civil rights under 42 U.S.C. § 1983." *Gillock*, 445 U.S. at 371. The Court emphasized that "the cases in this Court which have recognized an immunity from civil suit for state officials have presumed the existence of federal criminal liability as a restraining factor on the conduct of state officials." *Id.* at 372. The Court further emphasized that "in protecting the independence of state legislators, *Tenney* and subsequent cases on official immunity have drawn the line at civil actions." *Id.* at 373. The Court concluded "that although principles of comity command careful consideration, our cases disclose that where important federal interests are at stake, as in the enforcement of federal criminal statutes, comity yields." *Id.*

While Defendant places significant emphasis on the Court's holding in *Tenney*, the Court there addressed immunity from suit, not an evidentiary privilege that would prevent a state legislator from testifying at a deposition or trial. Undoubtedly, interference with the legislative process is greater when a state legislator is called upon to defend him or herself against a lawsuit, than when

he or she is merely called upon to testify in a civil case. Given the *Gillock* Court's tolerance of the fact that "the lack of an evidentiary privilege for a state legislator might conceivably influence his conduct while in the legislature," Defendant has not explained why this Court should extend the immunity from suit to an evidentiary privilege. Moreover, as Plaintiffs emphasize, Defendant has already allowed the depositions of City Manager Graham, Planning Commission members Greg Rummel and Polomsky, DDA Executive Director Stamiris, and Tom Johnston without any objection based on privilege. Indeed, Defendant did not respond to Plaintiffs' assertion that Defendant waived any purported privilege.

### III

Based on the above, Defendant's motion to quash will be denied. While Plaintiffs argued that Defendant's motion is untimely, it is expeditious to consider the merits of Defendant's motion as the issues will arise throughout the course of the trial. Moreover, as the relief sought by Defendant will be denied, Plaintiffs will not suffer any prejudice as a result of consideration of the motion.

Accordingly, it is **ORDERED** that Defendant's motion to quash subpoena for trial testimony [Dkt. # 65] is **DENIED**.

                                              s/Thomas L. Ludington
                                              THOMAS L. LUDINGTON
                                              United States District Judge

Dated: February 4, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 4, 2010.

        s/Tracy A. Jacobs
        TRACY A. JACOBS