UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONALD LOESEL; ARTHUR
LOESEL; GAYLE LOESEL;
ELAINE LOESEL; VALERIAN
NOWAK; and VALERIAN NOWAK &
ALICE B. NOWAK TRUST, by
VALERIAN NOWAK, Trustee,

       Plaintiffs,                              Case No. 08-11131
                                                      Honorable Thomas L. Ludington

v.

CITY OF FRANKENMUTH,

       Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO VACATE, AND DENYING DEFENDANT'S MOTION FOR JUDGMENT AND MOTION TO AMEND**

The City of Frankenmuth (the City) decided that a Wal-Mart supercenter was inconsistent with its view of the future. So when property owned by the Loesel family in Frankenmuth Township became a possible supercenter location, the City enacted an ordinance restricting the size of any new buildings in that area—nothing larger than 65,000 square feet. Thus unable to build a supercenter, Wal-Mart Real Estate Business Trust terminated its conditional agreement to purchase the Loesels' land for $4 million. The Loesels sued the City for damages, claiming that the selective zoning ordinance violated their rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

A trial was conducted after which the jury returned a verdict in favor of the Loesels, awarding $3.6 million in damages. The City moved for judgment as a matter of law (or, alternatively, for a new trial) on June 14, 2010. The Court denied the motion on September 27, 2010, and the City appealed.

The Sixth Circuit reversed and remanded on August 20, 2012. *See Loesel v. City of Frankenmuth*, 692 F.3d 452, 454 (6th Cir. 2012). The court's opinion emphasized that it was the Loesels' burden to demonstrate that the City's ordinance lacked "a rational basis . . . either by negativing every conceivable basis which might support the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Id*. at 465 (quoting *Warren v. City of Athens, Ohio*, 411 F.3d 697, 711 (6th Cir. 2005)). The Sixth Circuit panel found that while "a genuine dispute exists as to whether the ordinance lacked a rational basis" through negating any conceivable basis, this Court "should have granted the City's motion for judgment as a matter of law on the animus theory of liability." *Loesel*, 692 F.3d at 467. Because it was unclear whether the jury based its award on the conceivable basis theory of liability, or the invalidated animus theory, the Sixth Circuit remanded for a new trial.[1]

The City subsequently filed three motions: a motion for judgment on the animus theory of liability (ECF No. 172); a motion to vacate two orders (ECF No. 173); and a motion to amend/correct its witness list for trial (ECF No. 174). Based on the following, the motion to vacate will be granted, and the motions for judgment and to amend/correct will be denied.

**I**

The Loesels' claim rests on an equal protection class-of-one theory. In order to succeed on their claim, the Loesels must demonstrate "that they were treated differently than those similarly situated in all material respects." *Loesel*, 692 F.3d at 462 (citation omitted). Noted above, the Loesels must also show that the City's zoning ordinance lacked a rational basis, either

---

[1] The court noted that in criminal cases, there is a presumption that "jurors convicted [the defendant] on the factually sufficient theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 467 (6th Cir. 2012) (quoting *United States v. Henning*, 286 F.3d 914, 921–22 (6th Cir. 2002)). The court went on to indicate, however, that the Sixth Circuit has "declined" to apply the standard "in civil cases tried before a jury." *Loesel*, 692 F.3d at 467 (citing *Virtual Maint., Inc. v. Prime Computer, Inc.*, 11 F.3d 660, 667 (6th Cir. 1993)).

by negating every conceivable basis to support the City's conduct, or by demonstrating that the ordinance was passed because of animosity or ill-will against the Loesels. *Id*.

**A**

The Sixth Circuit concluded that based on the evidence elicited at trial, "there is a genuine dispute of material fact as to whether the three properties," (the Loesels' property and the two they claim are similarly situated[2]), are in fact "similarly situated." *Id*. at 465. Therefore, this Court did not err in denying the City's motion for judgment as a matter of law on that basis. The Sixth Circuit also established that there was a genuine issue of fact concerning whether the City's conduct lacked any conceivable rational basis. *Id*. at 466. It went on to conclude, however, that there was not sufficient evidence to support a question of fact regarding whether the City's actions were motivated by animus or ill-will toward the Loesels, as opposed to Wal-Mart's intended use for the property. *Id*. at 467.

The court indicated that "[a]lthough the Loesels presented abundant evidence showing that certain City officials, such as City Manager Graham, strongly opposed having a Wal–Mart supercenter in Frankenmuth, the animus had to be directed against the Loesels to be relevant to their claim." *Id*. (collecting cases). The court found that the Loesels had not demonstrated animus or ill-will directed toward them personally, and declared that judgment as a matter of law should have been directed on the issue.

Based upon this determination, the City now moves for judgment as a matter of law on the animus theory of liability. *See* Def.'s Mot. J. 6. The City asserts that "since the Court of Appeals in this case found that based on the evidence presented, the animus theory was not properly submitted to the jury, judgment as a matter of law on that theory is warranted at this time." *Id*.

---

[2] The location of the Bavarian Mall and the location of Bronner's Christmas Wonderland.

The Loesels argue that discovery should be re-opened to determine whether the City displayed "animus or ill will towards the individual Plaintiffs (as opposed to the Wal-Mart project only)," or, alternatively, that they be allowed "to present evidence at trial that the feelings directed towards the Loesels . . . are in fact legal animus against them as interpreted by the Sixth Circuit." Pls.' Resp. J. 2, ECF No. 184.

The Court agrees with the Loesels, at least in part. While discovery will not be re-opened at this late stage, the Sixth Circuit's determination that the Loesels had not shown animus or ill-will was based upon the evidence produced at the original trial, and before the Court of Appeals clarified the necessary target for that animus. But the court's "grant of a new trial nullified the original trial," *United States v. Sanders*, 485 F.3d 654, 657 (D.C. Cir. 2007), so granting judgment as a matter of law based on the Sixth Circuit's opinion would be problematic. This is so because the Sixth Circuit's decision concerning the animus theory was based on the lack of evidence from the first trial—which is no longer valid. Accordingly, the City's allegation that "[j]udgment on animus theory must be entered," Def.'s Reply J. 5 (emphasis in original), ECF No. 185, is mistaken.[3]

Supporting this conclusion is the fact that the Sixth Circuit did not limit the scope of the new trial, as is its prerogative. *See* Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2814 (3d ed. 2012) ("The appellate court, in reversing and ordering a new trial, may, when appropriate, provide that the new trial be confined to certain issues."). The Sixth Circuit did not direct a new trial limited to whether there was any conceivable rational basis to support the City's zoning ordinance, thereby excluding the jury's consideration of an animus theory of liability. Rather, the Sixth Circuit remanded "for a new

---

[3] Moreover, the City provides no authority for this proposition.

trial." *Loesel*, 692 F.3d at 468. Full stop. So while the court determined that the Loesels did not present a jury-submissable question on the animus theory of liability at the first trial, the Sixth Circuit did not exclude that issue from consideration at the second trial. At this point, neither will this Court.[4]

The City's argument that "[a]ll through the case" the Loesels "focused on animus towards Wal-Mart and thus waived any argument relating to animus against the Loesels" is unpersuasive. *See* Def.'s Reply J. 2. This is because the City goes on to declare that "[i]t is clear that at trial Plaintiffs intended to show animus toward the Loesels." *Id*. at 3. As the City makes "clear," the Loesels did not waive the argument that there was animus directed at them; they pursued the theory at trial but came up short. They will be given the same opportunity during the new trial.[5] The City's motion for judgment on the animus theory of liability will be denied.

**B**

The next issue is the City's motion to amend/correct its witness list for trial. Some additional background from the Sixth Circuit's opinion is necessary, however, before the City's motion can properly be addressed.

**1**

After indicating that a new trial would be ordered, the Sixth Circuit discussed the $3.6 million jury award that resulted from the first trial. In dicta, the court offered the following: "Although we also need not reach the issue of whether the district court erred in denying the City's motion for a remittitur, we believe that the potential for reversible error on the issue of

---

[4] Of course, if the Loesels do not present evidence demonstrating a material dispute concerning the animus theory of liability during the second trial, the City will be free to move for a directed verdict at that time.

[5] Likewise, despite the Sixth Circuit's conclusions, the City will have the opportunity during the new trial to oppose whether the Loesels' land was similarly situated and yet treated differently from other Frankenmuth locations and whether there was a conceivable basis for the City's conduct.

damages will be reduced by offering some guidance to the district court." *Loesel*, 692 F.3d at 468. The court indicated that the $3.6 million jury award was "excessive" because,

> the verdict itself renders the zoning ordinance unconstitutional and unenforceable. Had the jury verdict been upheld, the Loesels would have retained their property unencumbered by the zoning ordinance and been awarded $3.6 million, which is 90% of the full purchase price from Wal–Mart. This outcome would have let the Loesels recover twice, an impermissible result.

*Id*. The court then recommended that if the case makes it to trial a second time, "the jury should be instructed that the proper damages award in this case is the amount that the Loesels would have received from Wal–Mart had the ordinance never been enacted minus the property's value unencumbered by the zoning ordinance." *Id*. Further, the court suggested that "the jury instructions on damages include a specific formula to aid the jury in calculating damages." *Id*. at 469.

This Court notes that the jury award of $3.6 million likely was the jury's attempt to award the amount the Sixth Circuit indicated is appropriate (the amount Wal–Mart was willing to pay less the property's value when unencumbered). Evidence at trial indicated that the City paid approximately $10,500 an acre for "a parcel immediately north of the Loesels" in 2002. Trial Tr. vol 1, 25, Feb. 22, 2010, ECF No. 158. The jury may have used this information to conclude that $10,500 an acre was a fair price for the Loesels' land, situated just to the south. The Loesels' property was a 37-acre plot, and—at $10,500 an acre—was presumably worth $388,500.[6] The $4 million Wal–Mart was willing to pay for the land, minus this presumed value, would equal just over $3.6 million. The exact standard the Sixth Circuit elicited, and the exact damage award the jury returned.

The specific problem with applying the Sixth Circuit's recommendation is this: the $3.6 million award only constitutes a "windfall" if the Loesels can sell their land for a price close to

---

[6] 37 acres multiplied by $10,500 an acre.

what Wal–Mart previously offered. But there is no evidence establishing this is the case—the issue was not briefed by the parties when the Sixth Circuit addressed it. Wal–Mart's offer came in 2005, and much has changed in the ensuing years. Thus, the Sixth Circuit's assertion that the jury's award was "excessive," *Loesel*, 692 F.3d at 468, makes a damages calculation difficult.

2

Responding to the Sixth Circuit's dicta, the City indicates that experts are necessary to determine what the Loesels' land is worth. Def.'s Mot. Am. ¶ 5. Accordingly, it wants to amend its witness list to incorporate experts on the issue. The Loesels emphasize that before trial, the Court "set forth the manner in which Plaintiffs' damages could be proven, 'by determining the difference between the definite price term contained in the agreement between Plaintiffs and Wal-Mart and the value of Plaintiffs' property.'" Pls.' Resp. Am. 3 (emphasis in original) (quoting Jan. 25, 2010 Order), ECF No. 183. The Loesels contend that evidence establishing the land's value was submitted at the first trial, and can be again, without the need for additional expert testimony. In its reply brief, the City counters that "[o]nly an appraiser can aid the jury to determine the true measure of damages." Def.'s Reply Am. 4, ECF No. 186.

The Loesels have indicated "to this Court and to the Sixth Circuit, to the extent [they] have an election of remedies, they choose the monetary damages—not to have the ordinance declared unconstitutional." Pls.' Resp. Am. 5. Even if this were possible (which is unclear), a result where the Loesels retained their land as encumbered by the City's ordinance would still require testimony concerning the value of the land as encumbered to prevent a windfall.

These problems might be avoided by the following damages calculation for trial: If the jury concludes that the City's conduct violated the Loesels' equal protection rights under the Fourteenth Amendment, the City's ordinance will be deemed unconstitutional. Under such

circumstances, a judgment for $4 million could be entered in favor of the Loesels (the amount Wal–Mart was willing to pay in 2005), and the City would then be awarded the Loesels' 37-acre property. This way, there will be no danger of a windfall—regardless of the land's value—and time-consuming testimony concerning damage calculations will be unnecessary.

This method for assessing damages aligns with the City's valuation of the Loesels' property. The City indicates that the "amount the Loesels would have received from Wal-Mart had the ordinance never been enacted minus the property's value unencumbered by the zoning ordinance results in damages of $0." Def.'s Reply Mot. Amend/Correct 2 (emphasis and internal quotation marks omitted), ECF No. 186. Accordingly, it is clear that the City believes the value of the Loesels' property, unencumbered, is $4 million. So, pursuant to the Court's suggested damages calculus, the City would receive the property for what it believes is the land's fair market value.

Moreover, calculating damages in this manner comports with damages awards in other cases like this one. For example, in *Manatuck Assocs. v. Wendt*, No. 95-CV-1006, 1998 WL 563958, at *2 (D. Conn. Aug. 11, 1998), the court established that "the measure of damages for an equal protection claim that is analogous to a takings claim is the fair market value of the property at issue on the date of the equal protection violation, i.e., the date that the equal protection claim arises." The City's actions in this case are analogous. The value of the land during the relevant period is what Wal–Mart stood ready to pay—$4 million. So it makes sense for the Loesels to receive that amount, and for the City to obtain the land it "took" through its zoning ordinance. Thus, there is no need for additional experts, and the City's motion will be denied.

**C**

The final issue is the City's motion to vacate. The motion concerns two Court orders related to entry of judgment and assessment of interest. Specifically, on July 30, 2012, the Court granted in part the Loesels' motion for entry of judgment and assessment of interest, attorney's fees, and costs. The Loesels were awarded "attorneys fees in the amount of $190,361.50[.]" July 30, 2012 Op. & Order 9, ECF No. 164. On August 13, 2012—following supplemental briefing on the issue—the Court granted the Loesels' motion for assessment of interest, and they were awarded "$96,867.94 in pre-judgment interest[.]" Aug. 13, 2012 Order 2, ECF No. 167. But the Sixth Circuit's decision negated these orders. Indeed, that is likely why the Loesels have not responded to the City's motion to vacate the July 30 and August 13 orders. The motion will be granted, and the orders will be vacated.

**II**

Accordingly, it is **ORDERED** that the City's motion for judgment on the animus theory of liability, ECF No. 172, is **DENIED**.

It is further **ORDERED** that the City's motion to amend/correct witness list for trial, ECF No. 174, is **DENIED**.

It is further **ORDERED** that the City's motion to vacate, ECF No. 173, is **GRANTED**.

It is further **ORDERED** that the July 30, 2012 Opinion & Order, ECF No. 164, and the August 13, 2012 Order, ECF No. 167, are **VACATED**.

Dated: August 29, 2013                                      s/Thomas L. Ludington
                                                            THOMAS L. LUDINGTON
                                                            United States District Judge

- 10 -

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 29, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS