UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONALD LOESEL; ARTHUR
LOESEL; GAYLE LOESEL;
ELAINE LOESEL; VALERIAN
NOWAK; and VALERIAN NOWAK &
ALICE B. NOWAK TRUST, by
VALERIAN NOWAK, Trustee,

       Plaintiffs,                         Case No. 08-11131
                                          Honorable Thomas L. Ludington

v.

CITY OF FRANKENMUTH,

       Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT AND GRANTING PLAINTIFFS' MOTION TO STRIKE**

Ronald Loesel, Arthur Loesel, Gayle Loesel, Elaine Loesel, Valerian Nowak, and the Valerian Nowak and Alice B. Nowak Trust (collectively, the "Loesels") filed this action alleging that the City of Frankenmuth (Frankenmuth) violated their right to equal protection under the law. In 2004, the Loesels agreed to sell a parcel of land, located in Frankenmuth, to Wal-Mart Stores, Inc. (Wal-Mart) for $4 million. Frankenmuth then rezoned the Loesels' property in such a manner that it could not be used for a Wal-Mart supercenter. Unable to build a large shopping center, Wal-Mart was no longer interested in the Loesels' property and the deal fell through.

The Loesels alleged that Frankenmuth passed the ordinance intending to prevent them from selling their land to Wal-Mart. The case went to trial, and a jury awarded the Loesels $3.6 million in damages. However, because the jury was presented with two different equal protection theories of liability—one of which the Sixth Circuit found to be unsupported by the evidence—the jury's award was vacated and the case was remanded for a new trial. *See Loesel*

*v. City of Frankenmuth*, 692 F.3d 452 (6th Cir. 2012).  A second jury also concluded that Frankenmuth's zoning ordinance violated the Loesels' equal protection rights and awarded $3.8 million in damages.

On May 1, 2014, the Loesels filed a motion requesting entry of judgment and an assessment of interest and attorney's fees.  *See* Pls.' Mot. J., ECF No. 227.  Frankenmuth did not file a response to this motion until July 17, 2014—well over two months later.  The Loesels then filed a motion to strike this untimely response.[1]  The motion to strike will be granted, and much of the relief requested in the Loesels' motion for entry of judgment will be granted as well.

# I

The Court's first task is to address the jury award of $3.8 million in damages because of the Sixth Circuit's directions on remand.  On appeal, after indicating that a new trial would be ordered, the Sixth Circuit discussed the $3.6 million jury award that resulted from the first trial.  In dicta, the court offered the following suggestion: "Although we also need not reach the issue of whether the district court erred in denying the City's motion for a remittitur, we believe that the potential for reversible error on the issue of damages will be reduced by offering some guidance to the district court."  *Loesel*, 692 F.3d at 468.  The court indicated that the $3.6 million jury award was "excessive" because,

> the verdict itself renders the zoning ordinance unconstitutional and unenforceable.  Had the jury verdict been upheld, the Loesels would have retained their property unencumbered by the zoning ordinance and been awarded $3.6 million, which is 90% of the full purchase price from Wal–Mart.  This outcome would have let the Loesels recover twice, an impermissible result.

*Id.*  The court then recommended that if the case makes it to trial a second time, "the jury should be instructed that the proper damages award in this case is the amount that the Loesels would

---

[1] The Eastern District of Michigan Local Rules require responses such as Frankenmuth's to be filed "within 14 days after service of the motion."  E.D. Mich. LR 7.1(e)(2)(B).

have received from Wal–Mart had the ordinance never been enacted minus the property's value unencumbered by the zoning ordinance." *Id*. Further, the court suggested that "the jury instructions on damages include a specific formula to aid the jury in calculating damages." *Id*. at 469.

This Court notes that the jury award of $3.6 million likely was the jury's attempt to award the amount the Sixth Circuit indicated is appropriate (the amount Wal–Mart was willing to pay less the property's value when unencumbered). Evidence at trial demonstrated that the City paid approximately $10,500 an acre for "a parcel immediately north of the Loesels" in 2002. Trial Tr. vol 1, 25, Feb. 22, 2010, ECF No. 158. The jury likely used this information to conclude that $10,500 an acre was a fair price for the Loesels' land, situated just to the south. The Loesels' property was a 37-acre parcel, and—at $10,500 an acre—was presumably worth $388,500.[2] The $4 million Wal–Mart was willing to pay for the land, less this presumed value, would equal just over $3.6 million. The exact standard the Sixth Circuit elicited, and the exact damage award the jury returned.

The specific problem with describing the $3.6 million award as excessive is that it is unlikely that the Loesels can locate a buyer willing to pay a price close to what Wal–Mart previously offered. Wal-Mart had a unique economic use for the property that could be duplicated by few possible purchasers. No evidence was offered suggesting that the Loesels could locate such a purchaser. And, the issue was not briefed by the parties when the Sixth Circuit addressed it. Wal–Mart's offer came in 2005, and much has changed in the ensuing years.

Notably, the second jury was instructed to do just as the Sixth Circuit recommended, albeit in dicta. The verdict form in the second trial, concerning damages, first asked the jury

---

[2] 37 acres multiplied by $10,500 an acre.

what amount the Loesels would have received from Wal-Mart "had the [unconstitutional] ordinance never been enacted." Jury Verdict Form 2, ECF No. 220. The jury indicated $4 million, the purchase price offered by Wal-Mart. *Id*. The jury was then instructed to indicate its "assessment of the value of the [Loesels'] property without the zoning ordinance." *Id*. The jury, based on all of the evidence from the trial, concluded that the value of the land unencumbered by the zoning ordinance was $200,000. *Id*. The jury then awarded $3.8 million in damages. So although the Sixth Circuit indicated previously that such an award could be "excessive," this Court—and two separate juries—concluded that it was supported by the evidence.

**II**

The next issue to be addressed is the Loesels' motion to strike Frankenmuth's response to their motion for entry of judgment. As noted above, the Loesels filed their motion for entry of judgment on May 1, 2014, and under the Court's Local Rules, any response must have been filed by May 15, 2014. *See* E.D. Mich. LR 7.1(e)(2)(B). But Frankenmuth did not file a response by May 15; it filed its response on July 17, 2014—several months later.

The Loesels filed a motion to strike the untimely response, arguing that "[t]he Court is not obligated to review and consider Frankenmuth's tardy Response and striking the Response has the effect of streamlining the ultimate resolution of this action." Pls.' Mot. Strike 3, ECF No. 233. Frankenmuth responded to the motion to strike (in a timely fashion on this occasion), and indicates that it "has not violated any order of this Court" and that the Loesels "have suffered no prejudice" by the untimely filing. Def.'s Resp. Strike 1, ECF No. 236. Frankenmuth explains that "[f]ollowing the trial in this matter additional attorneys became involved in the case," and one of those attorneys "mistakenly" believed that the hearing date set by the Court for hearing

the Loesels' motion for entry of judgment (July 23, 2014) was the due date for a response. *Id*. at 2.

But the fact that the attorney's mistake was not "intentional" is irrelevant. Under Federal Rule of Civil Procedure 6, the Court may "extend the time" for Frankenmuth to file its response "after the time has expired"—obviously the case here—only if Frankenmuth "failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The Supreme Court declared that excusable neglect is "an equitable [determination], taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship*, 507 U.S. 380, 395 (1993). In *Pioneer*, the Supreme Court set out five factors for courts to balance when determining the existence of excusable neglect:

(1) the danger of prejudice to the nonmoving party,

(2) the length of the delay and its potential impact on judicial proceedings,

(3) the reason for the delay,

(4) whether the delay was within the reasonable control of the moving party, and

(5) whether the late-filing party acted in good faith.

*Howard v. Nationwide Prop. & Cas. Ins. Co.*, 306 F. App'x 265, 266–67 (6th Cir. 2009) (citation omitted).

In this case, the *Pioneer* factors weigh in favor of striking Frankenmuth's response, as the delay in filing was not due to excusable neglect. Although Frankenmuth argues the Loesels will not be prejudiced by its late filing, the Court cancelled the hearing concerning the Loesels' motion for judgment after awaiting a response—that never came—for several weeks; Frankenmuth only filed its response once the hearing was cancelled on July 17, 2014, less than one week before that hearing was to occur. The delay has impacted these proceedings,

implicating the second *Pioneer* factor and suggesting that the Loesels' motion to strike be granted.

The reason for the delay, and whether it was within Frankenmuth's control, also weigh in favor of striking the untimely response. The delay was caused by a miscommunication as responsibility for the case changed hands. Finally, the Court need not decide whether Frankenmuth acted in good faith to conclude that the late response should be stricken. The Loesels' motion to strike will be granted.

### III

In their motion for entry of judgment, the Loesels make four specific requests: (1) an award of pre-judgment interest concerning damages; (2) an award of attorney's fees; (3) an award of pre-judgment interest on costs; and (4) entry of judgment. Each issue will be addressed in turn.

### A

The Loesels first request pre-judgment interest on the $3.8 million the jury awarded in damages. They suggest, however, that the federal statutory interest rate set by 28 U.S.C. § 1961 not be used for this calculation.

"The district court may award pre-judgment interest at its discretion in accordance with general equitable principles." *Schumacher v. AK Steel Corp. Retirement Accumulation Pension Plan*, 711 F.3d 675, 685–86 (6th Cir. 2013) (brackets and citation omitted).[3] A proper determination of pre-judgment interest "involves a consideration of various case-specific factors and competing interests to achieve a just result." *Id.* at 686. Accordingly, "a mechanical

---

[3] Although *Schumacher* addressed claims under the Employee Retirement Income Security Act (ERISA), its principles have been applied to other federal claims such as those under the Racketeer Influenced and Corrupt Organizations Act (RICO). *See In re ClassicStare Mare Lease Litigation*, 727 F.3d 473, 495 (6th Cir. 2013). The Court concludes *Schumacher*'s guidance is applicable to the Loesels' equal protection claims.

application of [28 U.S.C. § 1961] amounts to an abuse of discretion." *Id*. Instead, courts are to fashion an award with the following in mind: "the remedial goal to place the plaintiff in the position that he or she would have occupied prior to the wrongdoing; the prevention of unjust enrichment on behalf of the wrongdoer; the lost interest value of money wrongly withheld; and the rate of inflation." *Id*. at 687.

To begin, an award of pre-judgment interest concerning damages is appropriate. While pre-judgment interest is within the Court's discretion, such an award is necessary here to make the Loesels whole. Had the transaction with Wal-Mart gone forward, the Loesels would have received $4 million to invest as early as 2006. Indeed, the funds, which were withheld by Frankenmuth during the course of this litigation, were presumably put to good use by the City. *See* Pls.' Mot. Ex. C. Because the money, in the jury's view, was rightfully the Loesels', their inability to make use of it over the past six years should be compensated.

Typically, interest is calculated pursuant to the federal statutory interest rate set by 28 U.S.C. § 1961. Section 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." § 1961(a). Such interest is to "be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." *Id*. For the week ending July 11, 2014, the average 1-year constant maturity Treasury yield was .11%. *See* Federal Reserve System Selected Weekly Interest Rates, *available at* www.federalreserve.gov/releases/h15/current/ (last visited July 16, 2014).

However, as noted in *Schumacher*, a mechanical application of the Federal Reserve statutory interest rate constitutes an abuse of discretion, and this Court is instead to consider the

primary objective of making the Loesels whole.  *See Schumacher*, 711 F.3d at 687.  The *Schumacher* court noted that the Federal Reserve statutory rate contemplated by § 1961 (.12% at the time) has become less reflective of a market rate and is therefore "exceedingly low" and "would inadequately compensate" wronged plaintiffs.  *Id*.  So the statutory interest rate of .11% will not be used here.

The Loesels offer the report of Paul Taylor of Plante & Moran, PLLC, an "independent economic damages assessment expert," to guide what interest rate should apply here.  *See* Taylor Report 1, *attached as* Pls.' Mot. J. Ex. C, at Pg. ID 6038.  Mr. Taylor calculated the interest that would have accrued had the Loesels invested the $3.8 million damages award from "March 1, 2008 through March 31, 2014 if borrowed at a prime lending rate of 3.25%."  *Id*.  Mr. Taylor concluded that those circumstances would have resulted in interest earnings of $817,000.  *Id*.

Mr. Taylor also calculated the interest the Loesels would have earned based upon "two investment portfolios with allocations of 80% fixed income bonds, 15% large capitalization stocks and 5% emerging market stocks over the period March 1, 2008 through March 31, 2014."  *Id*.  He concluded that these circumstances would have resulted in interest earnings between $747,000 and $1,308,000.  *Id*.

Given the overlap of the two data ranges, the Court concludes that an award of pre-judgment interest on the $3.8 million damages award based on the prime lending rate is appropriate.  *See Owner-Operator Indep. Drivers Assoc., Inc. v. Comerica Bank*, No. 12-3491, 2014 WL 1316223, at *13–*14 (6th Cir. Apr. 2, 2014) (Approving use of prime rate to calculate pre-judgment interest).  Based on Mr. Taylor's calculations, pre-judgment interest in the amount of $817,000 is warranted.

Although the Loesels request pre-judgment interest on their attorney's fee award as well, the Sixth Circuit has held that the "refusal to grant any prejudgment interest on [an] attorney's fee award" is "not an abuse of discretion." *Easter v. Jeep Corp.*, 896 F.2d 553, at *6 (6th Cir. 1990); *see also Green v. Nevers*, 196 F.3d 627, 634 (6th Cir. 1999) (indicating that federal law "does not dictate" an award of "prejudgment interest on the attorney fees"). The foregoing prejudgment interest accounts for both the Loesels' lost investment opportunities since March 2008. This award serves the purpose of "[p]lac[ing] the plaintiff in the position that he or she would have occupied" had the wrongdoing never occurred. *Schumacher*, 711 F.3d at 687.

**B**

The next question concerns what reasonable attorney's fee the Loesels are entitled to. They brought their claims pursuant to 42 U.S.C. § 1983, and the corresponding § 1988 governs the application of attorney's fees "[i]n any action or proceeding to enforce a provision of [§ 1983]." § 1988(b). Section 1988 provides that the court may allow the prevailing party—here the Loesels—"a reasonable attorney's fee as a part of the costs . . . ." *Id.* A reasonable fee is one that is "adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (citations omitted). To determine the amount of attorney's fees the prevailing party is entitled to, a court applies the "prevailing billing rates to the hours reasonably expended on successful claims." *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989).

The Court has already concluded that the attorneys worked on this case for a total of 923.85 hours from its inception through August 2010, which represents attorney's fees in the amount of $190,361.50. *See* July 30, 2012 Order 8, ECF No. 164. There is no reason to upset this finding.

The Loesels' counsel reportedly spent an additional 553.92 hours on this case since August 2010, including work on appeal and during the second trial. Given the length of the trials, and two trips to the Sixth Circuit, this number of hours is reasonable.

To determine the reasonable attorney fee rates that should apply to these hours, the Court will once again decline to apply the rates for specialized counsel in Southeastern Michigan. That is not where these claims arose, or where the case was litigated; and while the nature of the claims were unique, the proofs themselves were not. However, the Court will also not apply the same rates it used two years ago. Instead, based on the Affidavit of Andrew Concannon, an experienced attorney in the Great Lakes Bay Region, the Court will apply $300 per hour for partner work and $175 per hour for associate work. *See* Concannon Aff. ¶¶ 1–3, *attached as* Pls.' Mot. J. Ex. D. In addition, the Court will award $125 per hour for paralegal work. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 (1989) (indicating that paralegal work is properly awardable under attorney's fees).

The Loesels provided a chart of how the 553.92 hours break down among partners, associates, and paralegals. *See* Pls.' Mot. J. Ex. A–3. The chart indicates that lead counsel, Andrew Kochanowski, spent 193.2 hours on the case since August 2010. At a rate of $300 per hour, this constitutes $57,960 in attorney's fees. Associates Danielle Schoeny and Jesse Young performed 233.8 hours of work on the case since August 2010. At $175 per hour, this constitutes $40,915 in attorney's fees. Finally, Sarah Rickard, the firm's paralegal, spent 126.92 hours on the case. At $125 per hour, this represents an additional $15,865 in attorney's fees. All together, the Loesels are entitled to $114,740 in attorney's fees since August 2010. With the award for work prior to August 2010, they are entitled to a total of $305,101.50 in attorney's fees.

This fee award will not be altered based on lodestar calculations or upward increases because of the attorney's work. While the Loesels' counsel furnished excellent representation, the foregoing fee award adequately compensates them for their time and applies a high regional rate for attorneys in this venue.

### C

Federal Rule of Civil Procedure 54 provides that a prevailing party, such as the Loesels, are entitled to costs ("[u]nless a federal statute, these rules, or a court order provides otherwise"). Fed. R. Civ. P. 54(d)(1). The Loesels assert that they are entitled to $55,154.18 in costs, and that they are also entitled to pre-judgment interest on those costs.

However, the Loesels provide no authority for the proposition that they are entitled to pre-judgment interest on their costs. And, importantly, the Loesels incurred a substantial portion of those costs in 2013 and 2014. *See* Pls.' Mot. J. Ex. B. Applying pre-judgment interest on those costs is unwarranted, and rejecting the application of pre-judgment interest to the Loesels' costs will make little difference to their eventual recovery. Instead, the damages award, pre-judgment interest, and attorney's fees are more than adequate to make the Loesels whole.

### D

Finally, the Loesels request that judgment be entered in their favor. This request will be granted, and judgment will be entered.

### IV

Accordingly, it is **ORDERED** that the Loesels' motion to strike, ECF No. 233, is **GRANTED**. Frankenmuth's response to the Loesels' motion for entry of judgment, ECF No. 232, is deemed **STRICKEN**.

It is further **ORDERED** that the Loesels' motion for entry of judgment and assessment of fees, ECF No. 227, is **GRANTED** in part and **DENIED** in part.

It is further **ORDERED** that judgment will be entered, in the following amounts, in the Loesels' favor:

| | |
|---|---|
| Damages award: | $3,800,000.00 |
| Pre-Judgment Interest: | $817,000.00 |
| Attorney's Fees: | $305,101.50 |

It is further **ORDERED** that, pursuant to 28 U.S.C. § 1961, interest shall continue to accrue on the total judgment amount (plus all taxable costs) of $4,922,101.50, through the date it is paid in full.  This is a final order and closes the case.

Dated: August 8, 2014                                              s/Thomas L. Ludington
                                                                                  THOMAS L. LUDINGTON
                                                                                  United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 8, 2014
                                                   s/Tracy A. Jacobs
                                                   TRACY A. JACOBS

---